IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BRYON K. CHAMP,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 3:18-CV-1986-MAB |
| | ) |
| **CHESTER LICENSE FACILITY, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

### MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff, Bryon Champ filed four separate and distinct *pro se* lawsuits against various employees of Chester Mental Health Center, alleging violations of his constitutional rights under 42 U.S.C. § 1983, for events arising out of his involuntary confinement as a pretrial detainee at Chester Mental Health Center. *See* SDIL Case Nos. 18-cv-1986 (Doc. 18); 19-cv-26 (Doc. 14); 19-cv-263 (Doc. 17); and 19-cv-345 (Doc. 22). In this case, Champ alleges Defendants Shirley Forcum (Chester's unit director); Carri Morris (Champ's former therapist at Chester); and Dr. Nageswararao Vallabhaneni (his psychiatrist at Chester), violated his constitutional right to access to the courts (*see* Docs. 18, 154). This matter is currently before the Court on Champ's motion for summary judgment as to Morris (Doc. 154) as well as Defendants' motions for summary judgment (Docs. 165, 170).

For the reasons set forth below, Plaintiff Bryon Champ's motion for summary judgment will be DENIED and Defendants' motions for summary judgment will be GRANTED.

### BACKGROUND

Prior to the events giving rise to this action, Champ brought two cases against Winnebago County officials for excessive lockdowns while he was housed at Winnebago County Jail (Doc. 154, p. 2; Doc. 166, p. 3; Doc. 170, p. 2). *See Champ v. Caruana, et al.*, No. 2018-MR-203 (Winnebago County); *Champ v. Randy Wilt, et al.*, Case No. 3:18-cv-50098 (N.D. Ill.).[1] Champ's state court case was set for a hearing on May 2, 2018 (Doc. 154, pp. 2-3; Doc. 164, p. 2; Doc. 166, p. 3). Meanwhile, on April 5, 2018, Champ's complaint in his federal lawsuit was dismissed without prejudice because, among other reasons, his complaint raised several unrelated claims and failed to properly identify defendants. *See* Case No. 3:18-cv-50098 at Doc. 5. The federal court's order granted Champ leave to file an amended complaint and explained what changes he needed to make in order to proceed with the lawsuit. *Id.* The Court also included an amended complaint form with

---

[1] "A court may take judicial notice of an adjudicative fact that is both 'not subject to reasonable dispute' and either 1) 'generally known within the territorial jurisdiction of the trial court' or 2) 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Gen. Elec. Capital Corp. v. Lease ADR Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (quoting Fed. R. Evid. 201(b)). Here, the Court can take judicial notice of the filings in these other proceedings to establish, for example, the fact of the litigation, that the document was filed, that certain judicial findings were made, and that a party took a certain position. *In re FedEx Ground Package Sys., Inc., Emp. Pracs. Litig.*, No. 305-MD-527 RM, 2010 WL 1253891, at *4 (N.D. Ind. Mar. 29, 2010).

its order, which were mailed to Champ at both Winnebago County Jail and Chester. *See* Case No. 3:18-cv-50098 at Docs. 5-10.

On that same day, April 5, 2018, Champ was admitted to Chester following a finding that he was unfit to stand trial in Winnebago County (Doc. 154, p. 2; Doc. 166, p. 2; Doc. 170, p. 2). Upon arriving at Chester, Defendant Morris was designated at Champ's social worker/therapist, Defendant Forcum was the unit director of his unit at Chester, and Defendant Vallabhaneni was his treating psychiatrist (Doc. 154, p. 2; Doc. 154-1, p. 10; Doc. 166, pp. 3-4; Doc. 170, pp. 4-5).

Upon his arrival, Champ expressed his desire to conduct his legal work to the staff at Chester (Doc. 154, pp. 2-7; Doc. 166, pp. 4-5; Doc. 170, pp. 2-7). He was also shown the library at Chester, but he "instantly" determined it was inadequate and did not return because it only contained magazines (Doc. 154-3, transcript p. 32; Doc. 166, p. 5; Doc. 170, p. 2). To accommodate his ongoing legal work, Defendants utilized a system where Champ could retrieve his legal documents from boxes in the conference room and bring a limited quantity back to his room (Doc. 154-2, transcript pp. 61-62; Doc. 166, p. 5; Doc. 170, p. 4). However, Champ was unable to enter the conference room to swap out his legal materials when patients were meeting with a psychiatrist in the room (Doc. 112, p. 4; Doc. 170, p. 4; Doc. 170-2, p. 19).

Shortly after arriving at Chester, Champ informed Morris that he had an upcoming court hearing in his state court case (Doc. 154, p. 2; Doc. 170, p. 6). He believed Morris was the person who would assist him with his pending civil lawsuits (Doc. 154,

p. 2; Doc. 170, p. 6). In response, Morris informed Champ that he could only attend the hearing if the court issued a writ (Doc. 154, p. 3; Doc. 170, p. 6). At Champ's request, Morris contacted the Winnebago County Circuit Court and informed them that Champ had been admitted to Chester (Doc. 154, p. 3; Doc. 170, p. 6). However, Morris did not request a writ on Champ's behalf (Doc. 154, p. 3; Doc. 170, p. 6). Ultimately, a writ was never issued and Champ did not attend the state court hearing (Doc. 154, pp. 3-4; Doc. 164, p. 2). As a result, his state court case was dismissed without prejudice due to his failure to appear (Doc. 154, p. 4; Doc. 166, p. 3; Doc. 170, p. 3).

Similarly, after arriving at Chester, Champ discussed his federal court case with Morris and requested help finding an amended complaint form (Doc. 154, p. 4; Doc. 166, p. 5). After Champ was told they did not have the form at Chester, he wrote the federal court a letter which explained that he could not file an amended complaint because of Chester's inadequate law library and the lack of necessary forms (Doc. 154, pp. 4-6; Doc. 170, p. 3). The federal court granted Champ an extension to file his amended complaint (Doc. 154, p. 4; Doc. 170, p. 3). Additionally, Champ admitted that he only asked Morris for the form once and he only briefly looked at Chester's library before determining it would be of no help because it solely contained magazines (Doc. 154, p. 6; Doc. 166, p. 5; Doc. 170, pp. 2-3). Thereafter, Champ's federal court case was dismissed with prejudice on June 29, 2018 (Doc. 154, p. 4; Doc. 166, p. 3; Doc. 170, p. 8).

Champ filed this action on September 26, 2018 (Doc. 1), alleging Defendants violated his right to access the courts by causing him to miss his state court hearing,

denying him access to legal materials including the form he needed in his federal lawsuit, and prohibiting him from conducting legal work (Doc. 18 at p. 5). Champ claimed Defendants' actions caused the dismissal of both his state and federal lawsuits (*Id.* at pp. 5-6). He also alleged a different individual interfered with his legal mail (Doc. 18 at p. 6). Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, the Court concluded that Champ stated a plausible Fourteenth Amendment access to courts claim against Defendants (*Id.* at pp. 5-6). Champ's other claim regarding interference with his legal mail was dismissed without prejudice for failure to allege any harm resulting from the interference (*Id.* at pp. 6-7).

Notably, in October 2020, the Court granted Champ's motion for appointment of counsel (Docs. 97, 98). Accordingly, Attorney Jennifer Martin was recruited to represent him in this case (Doc. 99). After Ms. Martin's appointment, Champ was granted leave to file an amended complaint (Docs. 110, 111). In Champ's amended complaint, he clarified his allegations in the following way: (1) Morris was aware of his upcoming court hearing in the Winnebago County case, yet failed to arrange for his transfer, which resulted in his case being dismissed for want of prosecution; and (2) Defendants denied him access to legal materials and the law library, along with failing to maintain a sufficient law library or legally trained staff, which resulted in the dismissal of his federal case (Doc. 112 at pp. 4-5).

On December 30, 2022, Champ filed the instant motion for summary judgment as to Morris (Doc. 154). In that motion, Champ argues he is entitled to judgment as a matter

of law because Morris failed to adequately assist him with his pending legal matters, thereby causing his state and federal lawsuits to be dismissed (Doc. 154 at pp. 8-10). After filing the offensive motion on behalf of Champ, Ms. Martin withdrew as his counsel because she was leaving her current employment and transitioning to an in-house non-litigation legal position (Docs. 156, 160).

In February 2023, Defendants filed two motions for summary judgment. (Docs. 165, 166, 170). Vallabhaneni's motion argues that he is entitled to summary judgment because he was not personally involved in any of the alleged events Champ claims constituted a denial of access to the courts (*see generally* Docs. 165, 166). Similarly, Morris and Forcum's motion argues that Champ failed to demonstrate their actions denied him access to the courts and/or caused him to lose a potentially meritorious claim (*see generally* Doc. 170). Morris and Forcum also argue they are entitled to qualified immunity (Doc. 170, pp. 15-16).

Around the same time as Defendants' motions, Champ again asked the Court to appoint him counsel (Docs. 168, 172). His motions were denied and the Court issued a detailed decision as to why it was not granting Champ's request to recruit him yet another pro bono lawyer (*See* Doc. 178). The Court instructed Champ to respond to Defendants' summary judgment motions to the best of his ability and noted that in so doing, he may refer to his amended complaint and motion for summary judgment which were prepared by his former counsel (Doc. 178). The response deadline has come and

gone and to date, Champ has not filed responses to either of Defendants' summary judgment motions.

## SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.'" *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010) (quoting Fed. R. Civ. P. 56(c)). While a non-movant receives the benefit of conflicting evidence and reasonable inferences, he or she is still required to produce evidence sufficient to establish the essential elements of his or her claims. *Jackson v. Sheriff of Winnebago County, Illinois*, 74 F.4th 496, 500 (7th Cir. 2023). Additionally, "[t]he ordinary standards for summary judgment remain unchanged on cross-motions for summary judgment: we construe all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Leeper v. All. Resource Partners, L.P.*, 356 F. Supp. 3d 761, 767 (S.D. Ill. 2018) (quoting *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017)).[2]

---

[2] Champ has failed to file a timely response to Defendants' motions for summary judgment. "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). However, while it is true that Champ's failure to respond constitutes an admission of Defendants' facts, Champ has also filed his own offensive summary judgment motion and the Court is largely able to recall the facts in a way that cites to both Champ's and Defendants' motions/supporting exhibits for each fact.

#### DISCUSSION

"The Supreme Court has long recognized a prisoner's fundamental right of access to the courts." *Lehn v. Holmes*, 364 F.3d 862, 865 (7th Cir. 2004). This right requires prison officials to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828. However, failing to assist inmates alone is insufficient. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). To establish an actionable constitutional violation, an inmate must also demonstrate that the denial caused him to lose a potentially meritorious claim. *Id.*

I.   *Champ's Motion for Summary Judgment Against Morris (Doc. 154)*

Champ argues he is entitled to summary judgment against Morris because her actions and inactions resulted in the dismissal of both his federal and state court cases (Doc. 154, p. 1). Specifically, Champ contends Morris was responsible for providing him "with adequate assistance with his pending legal matters," which included procuring a writ in his state court case and an amended complaint form in his federal case (Doc. 154, pp. 8-9). In response, Morris argues Champ failed to establish that his underlying claim was nonfrivolous, that he was denied access to legal materials and was injured as a result, and that her actions were intentional or unreasonable (*see generally* Doc. 164).

In looking at Morris' conduct related to both of Champ's underlying cases, it is clear that Champ is not entitled to offensive summary judgment. Critically, he has not provided any explanation as to how or why his claims were nonfrivolous in either

underlying case. *See Lewis*, 518 U.S. at 343 ("[A]n inmate must demonstrate is that the alleged shortcomings in the prison library or legal assistance program have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim."). Without such a demonstration, Champ has not demonstrated an injury and therefore, cannot succeed on his access to courts claim. *Id.*; *see also Walters v. Edgar*, 163 F.3d 430, 434 (7th Cir. 1998).

For this reason alone, Champ's motion for summary judgment is DENIED.[3]

I. *Defendants' Motions for Summary Judgment (Docs. 165, 170)*

Defendants have filed two motions for summary judgment (Docs. 165, 170), which argue that Champ failed to demonstrate his underlying legal claims were nonfrivolous and failed to demonstrate that Defendants' actions adversely impeded his ability to litigate either claim (Doc. 166, pp. 3 & 8-11; Doc. 170, pp. 10-15).[4] The Court has found that the simplest way to consider Defendants' arguments is by examining the relevant facts and arguments related to each of Champ's two underlying suits. Crucially, when considering either underlying case, Defendants have demonstrated numerous reasons as to why they are entitled to summary judgment.

The portion of Champ's access to courts claim centered upon his dismissed state court lawsuit hinges on a finding that Morris or one of the other Defendants was required to obtain a writ for him, and the failure to do so denied him access to the courts. But

---

[3] The Court's analysis of Defendants' motions for summary judgment, contained below, necessarily includes further reasons why Champ's request for judgment as a matter of law fails.

[4] Forcum and Morris also argue they are entitled to qualified immunity (Doc. 170, pp. 15-16). However, the Court does not reach this argument because of its ruling on Defendants' other arguments.

Champ has failed to demonstrate that he suffered an actual injury when his state court case was dismissed without prejudice because he has not demonstrated or even adequately alleged that his state court case was nonfrivolous. *See, e.g.*, *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (When bringing an access to court claim, "[i]t follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."). In *Robinson v. Illinois Dept. of Corrections,* the court noted that a "Petitioner also must do more than allege that he was denied transportation to court for a hearing, he must also allege some injury-in-fact—i.e. that a meritorious claim was denied because of his inability to access the courts at the hands of the prison." *Robinson v. Illinois Dept. of Corrections*, No. 11-CV-1047, 2011 WL 693591, at *1 (C.D. Ill. Feb. 18, 2011). "This is because the mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access *the courts,* and only if the defendants' conduct prejudices a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of confinement has this right been infringed." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006) (emphasis in original). Champ has failed to do so here and therefore his claim must fail.

Additionally, Champ admitted to being able to refile his state court claim following its dismissal without prejudice (Doc. 170-1, transcript p. 54). This is further evidence that he did not suffer an actual injury in his state court case because an adequate remedy still existed following his failure to appear at the hearing. *See Hertel v. Miller-*

*Lewis*, No. 3:10-CV-009 JD, 2016 WL 7407007, at *2 (N.D. Ind. Dec. 22, 2016) ("Because the timing of events suggest that Hertel had reasonably adequate opportunity to access remedies in state court, he would not have been denied access to the courts to bring forth his claims against Skodinski.").

Moreover, even if Champ had demonstrated an actual injury in fact based upon his state court case's dismissal without prejudice, his entire argument rests on an untenable and unsupported premise: that his therapist was personally responsible for obtaining a writ for him to appear at a hearing in his civil lawsuit. According to Champ, her failure to obtain the writ denied him access to the courts. Yet, Champ has offered no caselaw or authority of any kind to support this bold assertion. Instead, he merely references vague statements from himself and Morris which indicate that Morris was supposed to assist him in any way he needed (Doc. 170, p. 5). But the Court will not determine whether Champ's right to access the courts has been violated based upon his (or even Morris') subjective beliefs about what aspects of Champ's civil litigation his therapist was supposedly responsible for. Moreover, the record demonstrates Champ communicated with the courts by mail while housed at Chester. *See generally* Case No. 3:18-cv-50098. He could have contacted the state court and sought a writ on his own. Had he procured a writ on his own, there is no indication that Defendants would have prevented him from attending his state court hearing. *See Sherrod v. Grosoboll*, 2014 WL 523395, at *3 (N.D. Ill. Feb. 7, 2014) (no violation of right to access the courts where there

was no indication the defendant would have refused to submit the plaintiff's papers had they complied with the rules).

Furthermore, it is undisputed that Morris contacted the state court on Champ's behalf and informed the court of his confinement at Chester (Doc. 154, p. 3; Doc. 170, p. 6). At that point, regardless of how Morris conveyed Champ's message to the state court, Morris had provided all the assistance she could to Champ in relation to his hearing and the decision to issue a writ was now in the discretion of the state court. To the extent Champ believes Morris needed to do more, Champ has not offered and nor is the Court aware of any authority that suggests an inmate or pretrial detainee is denied access to the courts if his therapist does not file a physical writ petition with the state court. In fact, even if Morris negatively impacted Champ's chances of receiving a writ by calling the state court, her action would be negligent at most. Isolated incidents of negligence do "not rise to the level of a constitutional violation actionable under section 1983." *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992); *see also Snyder v. Nolen*, 380 F.3d 279, 291 n.11 (7th Cir. 2004) ("[W]e have made clear that an allegation of simple negligence will not support a claim that an official has denied an individual of access to the courts."). For these reasons, Champ's right to access the courts was not violated in relation to his state court case.

Turning to Champ's federal case in the Northern District of Illinois, again here it is clear that Defendants did not violate his right to access the courts. Champ again has failed to demonstrate that his underlying federal lawsuit was nonfrivolous. *See*

*Christopher*, 536 U.S. at 415. To the contrary, the federal court's initial dismissal of his complaint provides an indication that the federal case likely was frivolous. *See* Case No. 3:18-cv-50098 at Doc. 5.

Additionally, Champ's claim ignores the fact that he had everything necessary to file an amended complaint without receiving additional materials from Defendants. In the order dismissing his complaint without prejudice, the federal court went to great lengths to point out the deficiencies in Champ's original complaint and explain what steps he must take to amend his complaint. *Id.* Further legal research and analysis was not among the court's requirements, therefore access to legal books and materials was not necessary. *Id.* Additionally, the federal court analyzed Champ's subsequent letters to the court to determine whether they could be construed as an amended complaint, similarly demonstrating the key requirement was to correct the substantive issues identified in his original complaint. *Id.* at Doc. 10.

In similar scenarios, the Seventh Circuit has held that an inmate's right to access the courts is not violated when prison officials fail to provide him with his requested records, "[b]ecause he did not need his records to start his lawsuit[.]" *Jackson v. Lemmon*, 737 Fed. Appx. 795, 797 (7th Cir. 2018) (unpublished); *see also Rossi v. City of Chicago*, 790 F.3d 729, 736 (7th Cir. 2015). This is because, even if the inmate's case would have been stronger had his request been granted, that fact alone "is not sufficient to support the conclusion that [the prison official's] actions denied [the inmate] an opportunity to achieve sufficient redress through a civil action." *Rossi*, 790 F.3d at 736. Likewise, here,

even if Champ's amended complaint would have been stronger if he had the form in question, he could have filed an amended complaint and achieved redress without it. Again, all that was required was for Champ to follow the court's instructions by clarifying his claims and properly identifying the defendants he sought to bring his claims against.

Moreover, at some point Champ was in possession of the very form he complains Defendants failed to provide him. The federal court's docket demonstrates that the form was attached on the two occasions the order dismissing Champ's original complaint was sent to him. *See* Case No. 3:18-cv-50098 at Docs. 5-7. Since Champ has never argued that he did not receive a copy of the order dismissing his case, it follows that he necessarily received a copy of the form too.

Finally, Champ's remaining allegations against Forcum and Vallabhaneni fail for all of the same reasons outlined above. To the extent he has even adequately alleged their involvement in his failure to conduct legal work and submit an amended complaint, Champ cannot overcome: (1) his failure to demonstrate an injury; and (2) the fact that by possessing the federal court's order dismissing his original complaint, he had everything he needed to submit an amended complaint. Ultimately, Champ "was not denied judicial access because he knew all of the relevant facts of his case and was free to pursue legal redress at all times." *Rossi v*, 790 F.3d at 736.

For these reasons, Defendants' motions for summary judgment are GRANTED.

## CONCLUSION

Plaintiff Bryon Champ's motion for summary judgment is **DENIED** (Doc. 154). The motions for summary judgment filed by Defendants Shirley Forcum, Carri Morris, and Nageswararao Vallabhaneni are **GRANTED** (Docs. 165, 170). Judgment is granted in Defendants' favor and this case is **DISMISSED with prejudice**.

The Clerk of Court is **DIRECTED** to enter judgment and close this case on the Court's docket.

**IT IS SO ORDERED.**

DATED:  September 19, 2023

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**
